et al. At this time, would Counsel for the Appellant please introduce himself on the record to begin? Good morning, Your Honors. Michael Walsh, on behalf of the Appellant and the Plaintiff below, T. H. Glennon Co. If Your Honors, apologies Justice Dunlap for what will be, I think, the most boring case on your docket today. This is a personal jurisdiction matter, civil procedure, right out of law school, and hopefully, unfortunately, it's more complex to apply the facts than to state the rule.         If the Court is all right, I would like to reserve a minute of rebuttal. Okay, you may. And then I would also like to focus my argument primarily on the specific context for personal jurisdiction generally, and then move into the civil conspiracy theory as well as to briefly touch the civil RICO count. Let me ask you one question to begin. There was a trial here as to the other defendants, correct? There was a trial as to only one defendant, Your Honor, the actual employee of my company. But there were some findings made in that trial. Yes, Your Honor, extensive written opinion. Okay, so if those findings are made, don't they damage your claim against this other defendant? Because those, or do you get to try everything anew? Because the findings were adverse to your claim. Because of the procedural posture of the case, we assert that the personal jurisdiction should be measured from the outset of the complaint. On the other hand, Your Honor, we did liberally take advantage of Judge Young's written findings where they were present and helpful to us. You can't just take some and leave others, right? No, certainly not, Your Honor. But the problem is that we had an employee who went awry, and he has been subject to a bench trial and found responsible for computer fraud and abuse and trade secret acts and other problems. His wife was also in an amended complaint alleged to be a co-conspirator. She, although she has counsel here, has not made an appearance and appears to just be letting this matter lie. And then we have an out-of-state gentleman with an out-of-state company, both from New  Counselor? Yes, ma'am. Excuse me, Your Honor. I'm sorry. I think what Judge Helpy was getting at specifically is that the court found, aside from the issue of jurisdiction, that your client didn't suffer any economic damages besides what he awarded in the other trial. So if he didn't suffer any damages, what is the point of going to a trial with these other defendants? That, Your Honor, finding was specific to the Computer Fraud and Abuse Act, but we also received rather extensive injunctive relief under the Defending Trade Secrets Act. And to the extent that any of those reliefs would be available to the other defendant, we still have a live concern and controversy. Even if you take that finding as reportable, there is also the fact that we would be potentially entitled to injunctive relief against the out-of-state defendant. But there was one particular finding, or more than one, that the defendant who was here on the appellee did not participate with those other individuals who caused harm. So if there's a finding as to that, how are you going to have jurisdiction? Your Honor, I don't think there was any substantial finding as to whether H.U.R.B. was complicit in Mr. Munday's behavior. Certainly Mr. Munday behaved poorly and has been held accountable for that. The question, I think, before the Court is whether we will pre-trial or post-trial, depending on when the Court measures it, whether it uses the prima facie standard or the factual gathering standard, whether we have sufficiently proven enough to explore at the outset whether H.U.R.B. was complicit. We argue that both the Defending Trade Secrets Act as well as the Computer Fraud and Abuse Act have very broad provisions for accomplice liability and other things. The damage finding that you're talking about, Your Honor, is specific to the Computer Fraud and Trade and Abuse Act. There were also issues with the Trade Secrets Act and other things that would provide us with other remedies that we would be allowed to pursue against the out-of-state defendant. As to the contacts, the complaint alleges a very substantial years-long effort to subvert an employee, to assist him in getting into secrets, to export secrets. It also turned out at trial that the employee was consulting with the out-of-state defendant in addition to designing a competing machine while on the clock at my client's company and doing a number of other activities which we believe connect them to this forum even though there is no physical connection. In terms of projecting corporate or commercial— Where did that coordination occur? Did the coordination that you allege between Munday and Herb, did that occur in New York or did it occur in Massachusetts? Your Honor, a lot of it was electronic, which makes it hard to place. In terms of the timeframe, it all occurred post-October of 2015 when the out-of-state defendant acquired the patent for the competing machine, and it all occurred prior to Mr. McNamara's termination in June of 2018. In terms of placing the exact contacts, forgive me, Your Honor, there's a case which is not cited in my brief. I don't remember exactly what it is. It's about 10 years old, and there's a college in the South that was sending mail order solicitations to students and also sending recruiters to tour high schools, and that was sufficient projection of power to make that out-of-state college responsible for litigating a peer. I will find, Your Honor, the case site and provide it in a 16L letter. But essentially, Your Honor, although there's no physical presence here, there certainly is a projection of corporate power in terms of subverting an employee, aiding him. The documents from Mr. Munday actually show at the trial that Mr. Munday had written a business plan where he anticipated the out-of-state defendant was going to give him cash money, there was going to be a joint venture, that they were going to go in together. It turns out that the joint venture was Mr. Munday's up-and-coming brokerage firm that was being repurposed, and it appears that that never came to fact, but there was certainly a great deal of effort that went to. One of the things that most concerns my client is that there's evidence from our computer expert in his affidavit that Mr. Munday's portable hard drive that contained all of the stolen secrets and data was connected to a complex commercial system that was not our system. I don't know whether the court is prepared to make the inference that that was the out-of-state defendant. There was certainly evidence that Mr. Munday traveled outside. There was certainly evidence that Mr. Munday undertook actions here for the benefit of HORB, including consulting, designing a computing machine, and such like. With that said, Your Honor, I'll move on to the conspiracy theory, unless there are any questions. I have a question. So what you just argued, you're saying that those facts that you outlined are independent of a conspiracy theory? Your Honor, I'm alleging a whole barrage of facts and then picking out three theories as to why this cloud of facts supports the exercise of jurisdiction. No, I wouldn't say they're independent of the conspiracy theory, but the conspiracy theory is a sharper way of projecting them. So those facts that you just outlined for us, which you assert to be contacts, you're asserting them as relevant to the conspiracy theory, and that's under some other independent theory? Yes, Your Honor. Okay, so you've got two theories then. You've got conspiracy and RICO. And then there was also a general specific contacts theory, Your Honor, which we spent most of our time on. The conspiracy theory of whether you call it a joint venture or what have you, this court spoke negatively of it in a prior case, but had left the question open. Several of the luminaries in both New Hampshire and DeMass had endorsed the idea that if you could prove some kind of a corporate civil conspiracy, that those contacts were sufficient to allow you to sort of ascribe contacts across. The subsequent Supreme Court jurisdiction has not ruled out that theory. Judge Garrity's opinion from, I believe, early 1981 is particularly luminous on the topic and explains that the necessary evils that flow from a conspiracy aren't necessarily stopped at the pretty niceties of state lines drawn by the king prior to our nation's being founded. In terms of to the extent of the court, we urge the court to take a look at that and consider, particularly now in a world of electronic communications where we're dealing with complex commercial statutes like computer fraud and abuse and defending trade secrets, that the idea that one can eventually project so much corporate power, even without a particular physical presence, that that's necessarily fair to subject you and to believe that you have purposeful availment as well as the relatedness of contacts. Lastly, your honors, we had also pled a civil RICO conspiracy. Well, on the conspiracy, what is your best evidence as to an agreement to cooperate wrongfully on the part of the New York defendants as opposed to they had a person that they were working with and they knew or didn't know as to what his obligations were? The three best pieces of evidence are the business plan that Mr. Munday drew up indicating that he expected to receive seed money from the out-of-state defendant and be a 50-50 joint partner in a new venture. The second piece of evidence is that Mr. and Mrs. Munday, on their electronic, both worked on and were creating advertising with the other firm that the out-of-state defendant owned, Greenwood Nurseries. And then the third great best piece of evidence is the extensive consulting work on the design of the competing machine that Mr. Munday was found by the district court to have been engaged as a consultant. In terms of the RICO conspiracy, your honor, the district court dismissed that count based on—I'm not sure if the court can, at this moment, revise that or reconsider that. We certainly opened the door, but I don't think we opened that particularly wide in our brief, and the court would be probably justified in considering the argument waived. But RICO statute is a nationwide personal jurisdiction statute, primarily coming out of its criminal roots, and— Well, do you waive that or not? None, unless the court tells me that I have, no. Your honor, we addressed it in our brief, I think, sufficiently. With that, I will retire. Thank you. Thank you, counsel. At this time, would counsel for the appellees please introduce themselves on the record to begin? Thank you, your honors. Rinaldo Rosario-Cupro for HURB Landscaping, Inc., and its vice president, Ulrich Boisvert. I will refer to them collectively as HURB. HURB is a small, independent landscaping company that provides mulch delivery, snow removal, and similar services in Albany, New York. It has sold approximately half a dozen mulch-coloring machines out of its Albany, New York location. It has no ties to Massachusetts. As set forth in the two sworn affidavits provided to the trial court, HURB is not registered in Massachusetts to do business. It owns no property, sells no products or services. This court should affirm the trial court because the decision to dismiss the complaint flows directly from the appropriate standard being used, the prima facie standard. Under that prima facie standard, the burden to establish jurisdiction lies with the plaintiff. We agree that the trial court applied the correct prima facie standard because of this court's holding in Chen v. U.S. Sports Academy, which instructs that a plaintiff's properly documented evidentiary proffers should be credited. Isn't there more than just the prima facie case here? Because there was a trial, and there were some findings made. Same question I asked opposing counsel. How do those findings benefit you? Absolutely. Those trial findings do bind the plaintiff. Certain of those findings are preclusive of a number of their claims. Most importantly, as we've said in our brief, there are findings that there are no damages that were incurred by a plaintiff. The only damages that were awarded in this case were a computer. There's no damages. Even assuming opposing counsel had pleaded on a paper a theory of jurisdiction, that belies that theory because, again, there's no damages. And there is stuff from saying, oh, yes, there are other damages when there's a finding already.  That's correct, Your Honor. And what's your view of how far the court went in finding lack of damages? Was that specific as to particular counts? Was it across the board? What's your position on that? All the counts were—the amended complaint in this action alleged many counts against all the defendants. There was a full opportunity for the principle of the plaintiff to testify to those. At the end of the day, the only damages that were awarded were to the CFAA damages to reimburse for computer costs. All the rest were simply findings of liability, no finding of damages for the DTSA violations or any of the other claims that were set forth, including the claims for which HURB was initially named a defendant. So even if we were to conclude there is jurisdiction, then the case would be dismissed based on those findings, correct? Because there's no damages. That's correct. A liability without damages, you know, that you don't— Exactly. And that's why we've raised the amount of controversy question even before this court. But we don't think we even need to get there, Your Honor, because there is a prima facie standard under the Chown case—  Oh, sorry. Yes. Counselor, they say that they're requesting equitable relief. I'm not aware of that. Not through this record. And part of what the trial court did—let me back up. Earlier in this case, they obtained equitable relief as to the primary tortfeasor, the former employer—employee. That equitable relief required the primary tortfeasor to remove themselves from the industry for this mulch colorant. As set forth in our affidavit, at that time, the HURB defendant, my client, exited the industry itself because of the concerns related to Mr. Munday's conduct having in any way any implication on him. That entire—since this—our client has been outside of the industry since 2019. But more to the point, under this court's jurisdiction in Chen, there is not even—in this court's precedent under Chen, there's not even prima facie jurisdiction that could be found because the amount of contacts that were examined by the trial court simply did not meet the modicum of information that needed to be provided. My brother just pointed out what he believed was his most important, most substantial connection between HURB and Massachusetts. And what he's citing, too, is what's called a business plan. He first, earlier in his argument, noted that that business plan never came to fruition. And most importantly, that business plan was not known by HURB. As we say, specifically in our affidavit, HURB had no knowledge and no participation in the creation of the business plan. And that business plan was generated by the former employee of plaintiff, not in any way HURB. As in the Chen case, the Judge Celia specifically cited that there is a stockdoliger of information that can indicate whether a particular showing has made the standard for—in a prima facie case. In the Chen case, it was the fact that the website was simply passive and the individual plaintiff in Massachusetts had reached out to the website. That was sufficient for him to conclude that there was no jurisdiction. Here, we believe that the fact that there were no sales of colored critters in Massachusetts is the stockdoliger in this case, because that is the only type of conduct that, if actually shown, could in some way permit some jurisdiction over HURB. But there is none. On those colored critters, there appears to be some evidence that there are some of the machines in Massachusetts. There's no allegation that HURB sold any of those into Massachusetts. We specifically note that we cannot—after we sell a colored critter, where it ends in the line of commerce, is nothing that we track or that we would be responsible for. So your position is you've only sold those in New York? Yes. And more to the point, it's the plaintiff's burden to establish that some conduct has occurred in Massachusetts. If there are, as they allege, six colored critters that exist in Massachusetts, they've had years to put in an affidavit from someone who says, I bought it in Massachusetts. But we have an undisputed affidavit from our—explaining that we only sell colored critters in Albany, New York. Do you advertise in Massachusetts? No. And in fact, that's—our statement of—our affidavit that we submit in opposition to jurisdiction is very clear that we do not—we have no products or services that are sold into Massachusetts in any way. We have a website, which, as this Court has known, simply putting a website on the internet is not sufficient for context for jurisdiction. And more to the point, the allegations that they provide are unsigned. The proffer that was permitted—submitted in support of jurisdiction before the trial court is at 107 to 111 of the appendix record. It is not a signed statement. And therefore, as Judge Thompson wrote in the A Corp versus All Plumbing case in 2016, we must accept the court—the plaintiff's, quote, properly documented evidentiary proffers. And she further wrote in the Al Scripps case in 2022 that the—you can simply—the trial court must make sure that it is crediting only genuinely contested facts when giving credence to the plaintiff's claim. So if there are no actual signed affidavits or sworn testimony as compared to what we've submitted, which is clear sworn testimony confirming that we have no sales into Massachusetts and that we do not do business in Massachusetts, that we never paid anyone to advertise our color critter other than that we have our own website, and that— On the affidavit, I think it carefully states that you don't currently sell into Massachusetts. What are we to make of that caveat of what may have happened prior to the affidavit? I'm not sure that that makes a distinction for the purposes of jurisdiction in the sense that there's nothing that the plaintiff has said that they did or ever in the past did. What they point out is that we once purchased items from Massachusetts, in fact, from plaintiff. We ordered dye colorants. There's a mulch coloring system. Dye is used to color the mulch. We manufactured the system. And at one point in our history, we purchased dye from plaintiffs. So we wanted to be clear that we do not— But that purchase is not related to the jurisdiction in this case, correct? That's correct. Thank you, Your Honor. Let me ask you one other question because you keep mentioning amount in controversy based on the jury trial finding. But for amount in controversy, it's what's reasonably pleaded at the beginning of the case when the complaint is filed. So would you agree that's really not an issue at this time? The amended complaint had sought $77 million. In this case, there were no actual damages awarded at the end. We simply raised the damages issue to note that the futility of returning if this court were to—it's essentially in the alternative, Your Honor. So that's not our main argument. You're correct. But has the court lost jurisdiction if the amount in controversy doesn't equal to or exceed the statutory amount? Let me say that the jurisdiction still can—we believe there's lack of jurisdiction, personal jurisdiction, and we do believe that if the amount in controversy cannot be met, there would not be substantive jurisdiction. That's our argument in the alternative. However, we think it's even more—it's possible for this court to simply affirm the district court, which did permit—did dismiss without prejudice. If there is a situation where a plaintiff in some universe could come back, it was invited to bring an action in an appropriate jurisdiction. It was invited to submit further documented evidence that would support prima facie jurisdiction. It did neither of those things. Thank you, Counsel. Thank you, Your Honor. Thank you, Counsel. At this time, would Counsel for the appellant please reintroduce himself on the record? He has a one-minute rebuttal. Good morning, Your Honors. Michael Walsh on behalf of the plaintiffs, T.H. Clennon. My brother, Counsel, dramatically understates the injunctive relief available. In addition to a three-year order barring the employee from the field, there was also a permanent injunction ordered for the return of the stolen materials. That alone gives a continuing damage, even if it be equitable, that makes this a real case in controversy and justifies us chasing along, even if you find personal jurisdiction or at least the opportunity to have raised it, that gives us a live controversy. My brother also points to the amount of controversy. We didn't brief the issue here. We did argue below that because we are arguing under federal statutes, such as the Computer Fraud and Abuse Act and the Defending Trade Secret Act, that the amount of controversy for those claims was abolished in the early 1960s. Thank you very much. There would be the diversity claims, whatever, those would be supplemental claims, correct? Yes, Your Honor. Thank you. Thank you very much, Your Honors. Let's call the next case. Thank you, Counsel.